UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
MARIO LONDONO-TABAREZ,

                    Movant,

       -against-                              07 Civ. 3572 (DAB)
                                              00 Crim. 556 (DAB)
                                              MEMORANDUM & ORDER

UNITED STATES OF AMERICA,

                    Respondent.
------------------------------------X
DEBORAH A. BATTS, United States District Judge.

       Mario Londono-Tabarez ("Movant") is presently serving a 188

month sentence of imprisonment after having been convicted by a

jury on August 16, 2001 of participating in a narcotics

conspiracy involving the possession and distribution of more than

five kilograms of cocaine, in violation of 21 U.S.C. § 846.  At

trial, the Government presented ample evidence of both the

existence of the conspiracy and of Movant's participation in it.

The Government's evidence included testimony from a cooperating

witness and intercepted telephone conversations in which Movant

and co-conspirators discussed narcotics transactions using

euphemisms and code words.  Movant testified in his own defense,

denying the existence of the narcotics conspiracy.

       The Second Circuit Court of Appeals affirmed Movant's

conviction and sentence in a Summary Order dated January 12,

2005.  See United States v. Londono-Tabarez, 121 Fed. Appx. 882

(2d Cir. 2005).  Upon the Court of Appeals' remand of the case,

pursuant to <u>United States v. Booker</u>, 543 U.S. 220 (2005) and

<u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005), the Court

re-imposed the original sentence of 188 months in an Order dated

June 14, 2005.  In a Summary Order dated February 2, 2007, the

Court of Appeals affirmed the re-sentencing.  <u>See</u> <u>United States</u>

<u>v. Londono-Tabarez</u>, 216 Fed. Appx. 71 (2d Cir. 2007).

    At a sentencing hearing on September 23, 2002, the

Government urged the Court to impose a two-level increase to

Movant's total offense level for obstruction of justice, pursuant

to U.S.S.G. § 3C1.1.  The Court noted that Movant very likely

testified falsely at trial, but declined to make a finding that

he did so.  (Tr. of September 23, 2002 at 8:20-25 & 9:1-4 & 10:2-

16.)  Had the Court imposed a two-level increase, Movant would

have faced a sentencing range of 235 to 293 months.  Movant now

asks the Court to vacate his conviction and sentence pursuant to

28 U.S.C. § 2255, raising claims of ineffective assistance of

counsel and prosecutorial misconduct.  Movant also requests an

evidentiary hearing in connection with his motion.  Such a

hearing is unnecessary.  For the reasons set forth, the instant

Motion to Vacate, Set Aside or Correct Sentence pursuant to 28

U.S.C. § 2255 is DENIED in its entirety.

## I.    BACKGROUND

Movant claims that he was denied the Sixth Amendment's guarantee of effective assistance of counsel as a result of his attorney's failure to obtain a plea offer from the Government or to counsel him of the benefits of pleading guilty and because the attorney failed to object at trial to the Government's introduction of co-conspirators' guilty plea allocutions.    (Mot. at 7-8 & 10-11.)    Movant also claims that the Government engaged in misconduct at trial by introducing portions of his co-conspirators' guilty plea allocutions into evidence and eliciting certain testimony from its expert witness.    (Id. at 11.)

Harold Pokel, Esq. represented Movant during pre-trial proceedings as retained counsel and at trial as an attorney appointed under the Criminal Justice Act (the "CJA").    Movant has submitted an affidavit along with the instant motion in which he states as follows:

> [P]rior to trial, attorney Pokel never provided me with any plea agreement offer from the government, did not discuss the strength or weakness of the government's case, did not explain to me the consequences of a conviction entered by jury verdict or guilty verdict, as it related to possible penalties, did not discuss the Federal Sentencing Guidelines and its application to me any my case as it related to a conviction by jury verdict [or] guilty plea, and did not fully and constitutionally advise me as to what pleas to enter.

3

(Affidavit ¶ 3.)  He states that he would have pled guilty had his attorney advised him fully of these issues.  (Id. ¶ 4.) Movant does not claim, however, that the Government ever made any plea offers to his attorney that the attorney then failed to communicate to him.  Indeed, the Government represents that the Government never made a plea offer to Movant's counsel.  (Opp. at 21.)

Approximately one month before Movant's trial was scheduled to begin -- on August 6, 2001 -- the Court held a conference on June 28, 2001 to discuss several issues that Movant had raised with respect to his attorney and the impending trial.  During the course of that conference, at which a court-certified interpreter was present, Movant expressed confusion as to why he was required to proceed to trial.  (Tr. of June 28, 2001 at 5:23-24.)  Mr. Pokel informed the Court that Movant "doesn't understand why he . continues to be charged in this case."  (Id. at 6:23-24.)  The Court inquired what Movant meant by that, whereupon the following colloquy took place:

    Mr. Pokel:  When he is actually innocent, that the charges
    should not have been brought or they should have been
    dismissed since he is innocent.

    The Court:  I see.

    Mr. Pokel:  At least that is what I think he means by that.

    The Court:  Wait a second.  Is that what you mean?

4

Defendant Londono-Tabarez:  Yes, your honor.

The Court:  You are innocent?

Defendant Londono-Tabarez:  I am innocent.  I am innocent.

(Id. at 7:1-11.)  The Court then explained to Movant why a trial

had been scheduled in his case and asked him if he understood the

explanation:

> The Court:  Let me explain one of your questions.  You say
> you say you are innocent.  The government believes it has
> sufficient evidence to prove you are guilty beyond a
> reasonable doubt.  You have been charged in an indictment
> which was returned by a grand jury that found probable cause
> to believe that you did what was charged in the indictment,
> and that is why you are where you are.
>     You have an opportunity to defend against the charges
> by going to trial.  So in responding to your question you
> don't understand why you're going to trial, the government
> would be put to its proof.  It will have to prove beyond a
> reasonable doubt that you are guilty of what the charges
> say.  You don't have to do anything, but it puts the
> government to their proof to do that.
>     One other alternative that you have, which would mean
> you don't have to go to trial, would be if you accepted and
> acknowledged guilt and pled guilty, then you would not go to
> trial, but then you would be sentenced.  Those are the two
> options.  If you maintain your innocence, then clearly the
> only option to you is to put the government to its proof by
> going to trial.  Do you understand that?
>
> Defendant Londono-Tabarez:  Yes, your Honor.
>
> The Court:  Does that answer that question about why you're
> going to trial?
>
> Defendant Londono-Tabarez:  Yes, your Honor.

(Id. at 7:12-25 & 8:1-11.)  Thereafter, the Court noted that two

of Movant's co-defendants planned to plead guilty prior to the

5

August 6, 2001 trial date but that since Movant "has stated he is
innocent, it would seem to me that we are going to trial on the
6th." (Id. at 18:3-9.) Accordingly, the Court advised all
counsel present at the conference of the submissions schedule for
voir dire requests and requests to charge. (Id. at 19:7-11.)

The Court continued the conference to hear additional issues
raised by Movant following a recess during which a member of the
Southern District of New York's CJA panel, David Touger, Esq.,
and Mr. Pokel had conferred with Movant through the court-
certified interpreter. Mr. Touger explained to the Court that
Movant wished to request an adjournment of the trial date, even
though the date had been set at a conference on April 2, 2001
without objection by either Movant or his attorney. (Id. at
23:9-12.) Mr. Touger advised the Court that he had explained to
Movant that "as the innocent person he professes to be, there are
no motions to be made. There is no motion, 'I'm innocent, the
case should be dismissed.'" (Id. at 23:22-25.) Nevertheless,
Movant told Mr. Touger that if the Court refused to postpone the
trial, then he would insist on replacing his attorney, Mr. Pokel.
(Id. at 25:12-23.) Alternatively, Movant advised he would
consider proceeding to trial on the date scheduled with Mr. Pokel
as his counsel if he did not have to pay for Mr. Pokel's
services. (Id. at 28:3-14.) The Court denied the request to

6

adjourn the start of the trial but permitted Movant to file a

financial affidavit to determine whether he might qualify for

appointment of counsel under the CJA.  Based on the information

provided in Movant's affidavit, the Court appointed Mr. Pokel, a

member of the CJA panel in the Eastern District but not in the

Southern District, pro hac vice and under the CJA to represent

Movant at trial.  Based on this arrangement, Movant advised the

Court that he had "no problem continuing with Mr. Pokel."  (Id.

at 30:12-13.)

    Before adjourning the June 28, 2001 conference, the Court

again advised Movant and his counsel that the options were to

either proceed to trial or reach a disposition with the

government beforehand:

> The Court:  Then, the only other thing I need to inform Mr.
> Pokel and Mr. Londono about is that it is my understanding,
> as we are here today, that we are going to trial in this
> matter on Monday, August 6th, at 9:30 am, when we start to
> select the jury.
>     As Mr. Pokel works with Mr. Londono in preparation for
> his defense at trial, obviously with the assistance of an
> interpreter at all times, should Mr. Londono determine that
> it is in his best interests to dispose of this case by plea
> rather than trial, I wish to advise you that the court needs
> to be informed of that no later than Friday, July 13th
> should Mr. Londono wish to avail himself of the credit for
> acceptance of responsibility and saving the government and
> the court the need for preparing for trial.
>     So that if Mr. Londono determines it is in his
> interests to plead guilty because he is guilty, then the
> court -- obviously the government primarily -- and the court
> should be informed of that no later than Friday, July 14th
> at 4:00 pm.

7

Do you understand, Mr. Pokel?

Mr. Pokel:  Yes, I do.

The Court:  I trust that you already have, but that you will
again explain to Mr. Londono what the significance of that
date is in terms of his offense level should he decide to
plead, that it would have some benefits . . . to do it by
that date.

Mr. Pokel:  I certainly will.

(Id. at 32:14-25 & 33:1-15.)  Following the conference, Movant

did not plead guilty, proceeded to trial on August 6, 2001 and

was convicted by a jury on August 16, 2001.


                        II.  DISCUSSION

A.    Ineffective Assistance of Counsel Claim for Failure to
      Obtain Plea Offer or to Advise of the Benefits of Pleading
      Guilty

      To prevail on a Motion to Vacate, Set Aside or Correct

Sentence, pursuant to 28 U.S.C. § 2255, on the basis of

ineffective assistance of counsel, a convicted defendant must

meet the stringent, two-part test articulated by the Supreme

Court in Strickland v. Washington, 466 U.S. 668 (1984).  See e.g.

Morales v. United States, 143 F.3d 94, 96 (2d Cir. 1998).  Under

Strickland the defendant must first demonstrate that his

counsel's performance fell below "an objective standard of

reasonableness" in light of prevailing professional norms.  466

U.S. at 687-88.  In addition, the defendant must demonstrate that

                              8

counsel's deficient performance prejudiced the defense such that there exists a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

In the context of whether a defendant should plead guilty, the Second Circuit Court of Appeals has held that effective assistance of counsel means that defense counsel "'must give the client the benefit of counsel's professional advice on this crucial decision.'" Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996) (quoting Anthony G. Amsterdam, Trial Manual 5 for the Defense of Criminal Cases (1988)) (emphasis omitted). Thus, "[e]ven if there might be circumstances where defense counsel need not render advice as to acceptance of a plea bargain, there can be no doubt that counsel must always communicate to the defendant the terms of any plea bargain offered by the prosecution." Cullen v. United States, 194 F.3d 401, 404 (2d Cir. 1999). Although the ultimate decision to plead guilty must be made by the defendant, in providing advice, defense counsel "may take into account, among other factors, the defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial as compared to a guilty plea

9

(whether or not accompanied by an agreement with the government),
whether the defendant has maintained his innocence, and the
defendant's comprehension of the various factors that will inform
his plea decision."  Purdy v. United States, 208 F.3d 41, 45 (2d
Cir. 2000).

Objectively adequate performance of counsel in the plea
bargaining context does not necessarily require "that the
defendant have counsel who recommends that a plea bargain be
pursued."  Brown v. Doe, 2 F.3d 1236, 1246 (2d Cir. 1993)
(citation omitted).  A "wide range of reasonable professional"
conduct is deemed to be sufficient in this context.  Id.  Thus,
the Supreme Court has recognized that "[i]f counsel is a
reasonably effective advocate, he meets constitutional standards
irrespective of his client's evaluation of his performance."
United States v. Cronic, 466 U.S. 648, 657 n.21, 104 S.Ct. 2039,
2046 n.21 (1984).  A clear example of objectively deficient
performance is a defense counsel's failure to convey a plea offer
to her client.  See Cullen, 194 F.3d at 404.

On the other hand, demonstrating prejudice based on
ineffective assistance of counsel in the plea bargain context
requires that "the defendant must establish a reasonable
probability that, if he had been given complete and accurate
information, he would have pled guilty instead of going to

10

trial." <u>United States v. Bicaksiz</u>, 234 F. Supp.2d 202, 204

(E.D.N.Y. 2002) (citing <u>Aeid v. Bennett</u>, 296 F.3d 58, 62 (2d Cir.

2002)).  The Second Circuit has recognized that "where the

disparity in potential sentences is great, a finder of fact may

infer that defendants who profess their innocence still will

consider a plea." <u>United States v. Pham</u>, 183 F.3d 178, 183 (2d

Cir. 2003).  Although a defendant's protestation of innocence

prior to trial is not entirely dispositive of whether a defendant

would have accepted a plea offer, it is a factor to be considered

on an ineffective assistance of counsel claim.  See <u>Cullen</u>, 194

F.3d at 407 ("Though [the defendant's] insistence on his

innocence is a factor relevant to any conclusion as to whether he

has shown a reasonable probability that he would have pled

guilty, it is not dispositive").

Movant asserts that he would have pled guilty had his

attorney, Mr. Pokel, properly advised him.  (Affidavit ¶¶ 3-4.)

Although he states that no plea offer was ever communicated to

him, it is clear that is because the Government never made any

such offer to Mr. Pokel in the first place.  In any event, Movant

does not state in his affidavit that Mr. Pokel failed to pursue

the possibility of a plea bargain.  Movant claims instead that

Mr. Pokel did not advise him of the potential consequences of

proceeding to trial as opposed to pleading guilty.  (<u>Id.</u> ¶ 3.)

11

However, at the June 28, 2001 conference -- approximately a month before the trial commenced -- Movant received extensive advice from Mr. Pokel, as well as from another attorney, Mr. Touger, on the status of his case and regarding the impending trial. The Court, moreover, explained to Movant at that conference why a trial had been scheduled and that he had the option of pleading guilty to avoid trial if in fact he was guilty. (Tr. of June 28, 2001 at 7:12-25 & 8:1-7 & 33:3-7.) The Court also advised Movant that he could qualify for a reduction of his total offense level if he chose to plead guilty in a timely fashion. (Id. at 33:10-14.) Mr. Pokel advised the Court that he would discuss benefits of pleading guilty to Movant as well. (Id. at 33:15.) The Court finds, therefore, that Mr. Pokel's representation in the context of plea bargaining was reasonable and constitutionally sufficient.

The Court ultimately sentenced Movant, after declining to enhance his sentence for perjury committed at trial out of consideration for his family, at the low end of the applicable 188 to 235 month incarceration range. Had Movant pleaded guilty prior to trial and received credit for acceptance of responsibility, he would have faced a sentencing guideline incarceration range of 135 to 168 months and a mandatory minimum sentence of 120 months' imprisonment. (Opp. at 21.) The

12

difference between 188 month sentence that this Court imposed and
the range of sentencing that Movant would have faced had he pled
guilty does not give rise to an inference of prejudice despite
Movant's assertion that he would have taken an offer.  <u>See, e.g.</u>
<u>Bicaksiz</u>, 234 F. Supp.2d at 205 (finding that defendant could not
demonstrate sufficient prejudice where "the guidelines called for
a sentence at level 36, of 188 to 235 months" but had defendant
"pled to the indictment, and received three levels off for
acceptance of responsibility, the offense level would have been
33, and the range would have been 135 to 168 months").

Movant steadfastly insisted that he was innocent of the
charge, both prior to and at trial.  At the June 28, 2001
conference, Movant declared to the Court that he was innocent.
(Tr. of June 28, 2001 at 7:8-9.)  At trial, he testified under
oath that he had never discussed cocaine transactions with his
co-defendants or had ever heard anyone else discuss cocaine
transactions either.  (Tr. of August 14, 2001 at 969:12-25; Tr.
of August 15, 2001 at 1000:20-25 & 1001:1-4.)  Movant also flatly
denied that he was a member of the narcotics conspiracy charged
in the Indictment.  (Tr. of August 14, 2001 at 974:23-25 & 975:1-
5.)  Given his vehement protestations of innocence prior to and
at trial, coupled with the fact that the Government never made
him an offer, the Court finds incredible the assertion Movant now

13

makes that he would have pled guilty if he had been provided an
offer or counseled to do so.  See Gluzman v. United States, 124
F. Supp.2d 171, 178 (S.D.N.Y. 2000) ("Where the government does
not offer a plea, and where the client insists that she did not
participate in the crime, a failure successfully to negotiate a
plea does not amount to ineffective assistance of counsel").
Additionally, the Court notes that Movant's "persistent claims of
innocence would have rendered highly problematic [his] ability
adequately to allocute in view of the requirements of Fed. R.
Crim. P. 11."  Id. at 178.  The Court thus finds that, in
addition to failing to demonstrate the objective deficiency of
his attorney's performance, Movant cannot demonstrate that he has
suffered prejudice necessary to sustain his ineffective
assistance of counsel claim.  Accordingly, the Motion to Vacate,
Set Aside or Correct Sentence on the basis of Movant's attorney's
performance in the context of plea bargaining is DENIED.

     Movant's claim that his attorney provided ineffective
assistance in the context of plea bargaining is the only one
raised in the instant motion under 28 U.S.C. § 2255 that might
potentially require further factual development.  Nevertheless,
the Court finds that an evidentiary hearing is unnecessary
because "the motion and the files and records of the case
conclusively show that the prisoner is entitled to no relief."

28 U.S.C. § 2255.  Movant's request for an evidentiary hearing is therefore also DENIED.


B.    Ineffective Assistance of Counsel Claim for Failure to Object to the Government's Offer of Co-conspirators' Guilty Plea Allocutions as Evidence

Movant claims that his attorney provided ineffective assistance at trial by failing to object when the Government "introduced portions of the guilty plea allocutions of two of Movant's [co-conspirators], Carlos Zapata and Mario Granados. (Mot. at 10.)  This claim fails since Movant can neither demonstrate that counsel's conduct was unreasonable at the time nor that any prejudice resulted to the defense.  As the Government cogently points out, "[i]t was well-settled at the time of trial that guilty plea allocutions were admissible" as evidence.  (Opp. at 23 (citing United States v. Tropeano, 252 F.3d 653, 658 (2d Cir. 2001)).  The Supreme Court's decision in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354 (2004), was issued three years after the trial.  Moreover, the Second Circuit Court of Appeals held that the admission of Movant's co-conspirators' plea allocutions "were entirely cumulative" and that "their admission was harmless" error.  United States v. Londono-Tabarez, 121 Fed. Appx. 882, 883 (2d Cir. 2005).

15

Accordingly, the Motion to Vacate, Set Aside or Correct Sentence
on this basis is DENIED.


C.    Claims of Prosecutorial Misconduct

      Movant's claims that the Government improperly introduced

his co-conspirators' guilty plea allocutions into evidence and

improperly elicited expert testimony at trial on the meaning of

certain code-words used by the defendants in the course of their

narcotics conspiracy are entirely without merit.  As discussed

above, at the time of trial, the guilty plea allocutions of co-

conspirators were admissible evidence.  The Government did not

act improperly in seeking to introduce such evidence.  As for the

expert testimony introduced by the Government, it too was

permissible at the time of trial.  The Second Circuit observed

that portions of the expert witness' testimony were "problematic"

and should not have been permitted, but only in light of its

subsequent precedents in United States v. Dukagjini, 326 F.3d 45,

55 (2d Cir. 2003) and United States v. Tommy Cruz, 363 F.3d 187,

196 (2d Cir. 2004).  See United States v. Londono-Tabarez, 121

Fed. Appx. 882, 884 (2d Cir. 2005).  The Second Circuit

ultimately concluded, however, that the admission of those

portions of the expert witness' testimony was harmless error.

Id. at 885.  The Government therefore did not act improperly in

16

introducing the expert witness' testimony.  Accordingly, the
Motion to Vacate, Set Aside or Correct Sentence on the grounds of
prosecutorial misconduct at trial is DENIED.


### III.  CONCLUSION

For the foregoing reasons, the instant Motion to Vacate, Set
Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 is DENIED
in its entirety.  Further, since Movant has failed to make a
substantial showing of the denial of a constitutional right, a
certificate of appealability SHALL NOT ISSUE.  See 28 U.S.C. §
2253(c)(2); Lozada v. United States, 107 F.3d 1011 (2d Cir.
1997), abrogated on other grounds by United States v. Perez, 129
F.3d 255, 259-60 (2d Cir. 1997).  Should Movant seek to appeal in
forma pauperis, the Court certifies, pursuant to 28 U.S.C. §
1915(a)(3), that any appeal from this Memorandum and Order would
not be taken in good faith.  See Coppedge v. United States, 369
U.S. 438 (1962).  The Clerk of Court is directed to close the
docket in the above-captioned civil case and to serve a copy of
this Memorandum and Order on the Government and the Movant.
SO ORDERED.

Dated:    New York, New York
          January 2, 2008

                                        Deborah A. Batts
                                        United States District Judge

17